# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| AMY LIGHTFOOT, | |
| Plaintiff, | |
| | CIVIL NO. _____ |
| v. | |
| WELLSTAR HEALTH SYSTEM, INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiff Amy Lightfoot ("Ms. Lightfoot" or "Plaintiff"), files the following Complaint against Wellstar Health System, Inc. ("Wellstar" or "Defendant"), seeking damages, equitable relief, attorneys' fees, and all other remedies available under the applicable law, as set forth below.

## Nature of Complaint

1.

This action is brought pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), seeking equitable and injunctive relief, back pay, compensatory and punitive damages, attorneys' fees, and

costs against Defendant based on Ms. Lightfoot's claims of disability discrimination, failure to accommodate, and retaliation.[1]

## The Parties

### 2.

Ms. Lightfoot is a citizen of the United States and a resident of the State of Georgia, currently residing in Cobb County. She is a former employee of Defendant Wellstar, where she worked at Defendant's Cobb hospital location. Ms. Lightfoot was, at all times relevant hereto, an employee within the meaning of the ADA. Ms. Lightfoot submits herself to the jurisdiction of this Court.

### 3.

Defendant Wellstar is a corporation organized under the laws of the State of Georgia with its principal place of business located at 793 Sawyer Road, Cobb County, Marietta, Georgia, 30062. Wellstar is registered to conduct business in the State of Georgia and has employees at multiple locations throughout Georgia who deliver medical and nursing care to the public on its behalf. Wellstar may be served through its registered agent for service of process, Leo E. Reichert, at 793 Sawyer Road, Cobb County, Marietta, Georgia, 30062.

---

[1]    Ms. Lightfoot also has claims under the Pregnant Workers Fairness Act ("PWFA") arising out of the same common core of operative fact that she will add to this Complaint by amendment upon receipt of a notice of right to sue from the EEOC pertaining to her PWFA claims.

## Jurisdiction and Venue

### 4.

Ms. Lightfoot's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 2000e-5(f)(3) and 12101 and other applicable law.

### 5.

This Court is an appropriate venue for all of Ms. Lightfoot's claims pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) as the judicial district in which the events and omissions, including unlawful employment acts, giving rise to Ms. Lightfoot's claims occurred.

## Administrative Proceedings

### 6.

Ms. Lightfoot filed a charge of discrimination with the EEOC on August 16, 2023, setting forth claims of disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"). That Charge was timely filed less than 180 days after the acts of discrimination and retaliation identified in the Charge.

7.

The EEOC issued a Notice of Right to Sue on January 29, 2024, and Plaintiff files this Complaint within 90 days of receipt of that Notice.

## The Facts

### Mr. Lightfoot's Employment History

8.

Ms. Lightfoot began her employment for Wellstar Cobb Hospital on September 14, 2020, where she worked as a Registered Nurse in the Employee Health Department until taking maternity leave in January 2022.

9.

As a Registered Nurse, her primary duties included, among other things, screening new hire medical information to ensure compliance with health requirements, ordering lab tests, X-rays, and Health Department clearances as needed, reviewing employee health policies with new hires, reviewing annual health questionnaires and TB risk worksheets, gathering and inputting outside immunization records during flu season and for Covid vaccine boosters seasonally, reviewing processes and procedures for bloodborne pathogen exposures, reviewing confidential emails and exemption requests for required vaccines before routing them to the appropriate committees.

10.

Ms. Lightfoot performed well in this role, received positive performance evaluations, and was well respected by her peers and supervisors alike.

11.

While employed at Wellstar, Ms. Lightfoot reported to Johnny Gaines, Manager of the Employee Health Department. She also reported indirectly to the next level of management, Mr. Dalton Skipper, Director of Employee Health.

<u>Ms. Lightfoot's Maternity Leave, Traumatic Birth Experience, and Resulting Pregnancy-Related Limitations/Disabilities</u>

12.

Ms. Lightfoot began a maternity leave in January 2022. At the beginning of her leave, she suffered a traumatic and life-threatening experience while giving birth to her son at the same Wellstar Cobb Hospital where she worked.

13.

Ms. Lightfoot's mental health suffered greatly as a result of this experience, and she sought psychological and psychiatric treatment in an effort to fully recover from this traumatic event.

14.

Ms. Lightfoot's diagnoses attributable to the traumatic birth incident include post-traumatic stress disorder, generalized anxiety disorder, and post-partum depression, among others.

15.

Ms. Lightfoot's physical and mental conditions stemming from her traumatic childbirth experience substantially limit one or more major life activities, including but not limited to sleeping, thinking, socializing, and relating to others.

Ms. Lightfoot's Return to Work and Her Need for Reasonable Accommodations

16.

Ms. Lightfoot was fit to return to work by the time her maternity leave ended in June 2022, but she continued experiencing symptoms of post-traumatic stress disorder and anxiety, including physical manifestations. She found, upon attempting to return to work at the Cobb facility where the incident occurred, that her presence in that building exacerbated her symptoms, including causing a high heart rate and other manifestations of anxiety. Accordingly, her physician determined that it was medically unsafe, at least temporarily, for her to return to work at Defendant's Cobb hospital location.

17.

To accommodate Ms. Lightfoot's limitation (her inability to work onsite at the Cobb hospital where she had a traumatic birth experience) upon her return in June 2022, her manager, Mr. Gaines assigned her duties that could be performed remotely. These duties included monitoring new hires and appointments in ICIMS and coordinating account status with managers, reviewing flu and COVID email

inboxes and making updates in Agility and related data storage systems, and corresponding with employees regarding appointment scheduling and follow-ups, among other things. These duties provided Ms. Lightfoot with full-time work.

18.

In September 2022, while Ms. Lightfoot continued to work remotely, Wellstar informed her of flu clinics at its Cobb and Kennestone facilities and offered her the opportunity to drop in and work as long as she could. Ms. Lightfoot attempted to work the flu clinic at Cobb but had an adverse physical and emotional reaction, and when she could not get her heart rate to return to a normal level, she and a Nurse Practitioner working nearby agreed that she should leave.

19.

Ms. Lightfoot worked the flu clinics Kennestone during that same time period and was able to work through the end of the clinic schedule without any major adverse reactions. Later, on October 11, she successfully worked an in-person flu clinic at the Windy Hill facility without any health issues.

Wellstar's Repeated Demands that Ms. Lightfoot Return to Work at the Cobb Hospital Despite Her Serious Adverse Physical Reaction When in That Building and Her Continued Successful Performance of Remote Duties

20.

During the time period between September and November 2022, and despite clear communication from her health care providers that working in-person at the

Cobb hospital would be detrimental to Ms. Lightfoot's health, Wellstar told Ms. Lightfoot at least twice (once in September and again in November) that she needed to return to work in person at Cobb. Wellstar did not express willingness either time to discuss any other options – it was work at Cobb or apply for leave, and those were the only options given.

21.

After being told she had to return to Cobb in September, Ms. Lightfoot and her supervisor Mr. Gaines worked it out for her to continue working remotely.

22.

In or about November 2022, a Coordinator in Employee Health went out on leave. Despite having informed her that returning to Cobb was the only option for her to keep working, Wellstar asked Ms. Lightfoot to assume some of that Coordinator's duties during hear leave, and Ms. Lightfoot readily complied.

23.

As of early 2023, Ms. Lightfoot was continuing to perform her full-time remote duties, including those she took on to cover for the Coordinator during her leave. She was also assigned new roles, such as working on the Vaccine Advisory Committee for Covid exemptions as well as a new role Mr. Gaines had proposed specifically for Ms. Lightfoot on becoming a Blood-Borne Pathogen Exposure Subject-Matter Expert.

<u>The Development of a Plan for Ms. Lightfoot to Reacclimate to In-Person Clinical
Work Through a Progressive Hybrid Schedule</u>

24.

In or about February or March 2023, Mr. Gaines and Ms. Lightfoot began
discussing a hybrid, progressive schedule for returning to work in person. This
included working in-person at the Wellstar Administration building, then adding
days there before also adding days in a clinical setting.

25.

By the end of March, Ms. Lightfoot and Mr. Gaines had developed and agreed
on a progressive-hybrid plan that would run through July, by which time she would
be ready to return to work full-time and in person in a clinical setting.

26.

As part of his communication with Ms. Lightfoot about a newly proposed
hybrid schedule, Mr. Gaines specifically noted that the company could look at
reassigning her to a different location. Ms. Lightfoot agreed to Mr. Gaines's proposal
and began working the progression as suggested, while discussing with her manager
the options for clinics that might work well for her given her residence in Smyrna,
including Douglas, North Fulton, and Kennestone.

<u>Wellstar's Revocation of the Progressive-Hybrid Schedule and Refusal to Provide
or Discuss Any Other Reasonable Workplace Accommodations</u>

27.

Despite the fact that Ms. Lightfoot had agreed to and was successfully completing the progression schedule that her supervisor had proposed, and that she had proposed multiple locations where she would gladly accept reassignment for clinical work, Wellstar again changed course.

28.

On or about April 17, 2023, Mr. Gaines informed Ms. Lightfoot that the Director of Employee Health, Dalton Skipper, was requiring her to resume a full-time, on-location schedule five days a week at the Wellstar Cobb facility in just two weeks. This mandate was issued despite the fact that her doctor's orders required that she stay away from that location. Wellstar did not offer her any other options.

29.

Not wishing to give up her job but remaining medically unable to comply with Wellstar's demand that she return to the Cobb facility, Ms. Lightfoot contacted Human Resources to ask what other options may be available and was instructed that she could apply to take involuntary unpaid leave. She requested and was approved for 12 weeks of FMLA leave, from May 5 to July 27, 2023.

30.

Ms. Lightfoot did not want to take unpaid leave – she wanted to work – but since Wellstar told her that her only option was to work at the Cobb facility full-time and in-person, she had no choice and was forced out on leave instead.

31.

Wellstar refused to continue to follow the progressive hybrid schedule that it had developed with her in March and refused to provide or even discuss any other accommodations.

32.

Despite representing to Ms. Lightfoot that it could not accommodate her with remote work because it did not have any remote work to be done, shortly after she was forced out on leave, Wellstar brought a team of remote nurses into the same Employee Health Department in which Ms. Lightfoot had worked before her leave began. Those nurses continued working remotely for some time while Ms. Lightfoot remained on involuntary unpaid leave.

**Ms. Lightfoot's Involuntary Unpaid Leave and Wellstar's Refusal to Discuss Workplace Accommodations With Her Until Approximately Ten Months Later**

33.

Throughout her leave, Ms. Lightfoot wanted to work, but because she had been told her only option to work was full-time, in-person at the Cobb Hospital, she had to remain on unpaid leave instead.

34.

Being forced on leave by her employer – an organization that supposedly strives to help people return to good health – was mentally and emotionally traumatic for Ms. Lightfoot, which exacerbated the very pregnancy-related mental health conditions that caused her to need accommodations to begin with.

35.

Being forced on leave by her employer caused Ms. Lightfoot significant financial losses in the form of lost wages and benefits.

36.

After exhausting twelve weeks of FMLA leave, Ms. Lightfoot found herself in the same difficult position, as Wellstar continued to refuse to accommodate her disability by allowing her to work remotely, work the hybrid progression that it had proposed in March, or place her at another hospital. As such, she requested and was approved for an extended ADA leave, through October 19, 2023, and then again through December 29, 2023.

37.

After repeatedly requesting to return to work throughout her leave in 2023, Wellstar finally expressed willingness to discuss returning her to work and providing her reasonable workplace accommodations in late December 2023.

38.

Ms. Lightfoot eagerly provided all information requested by Wellstar in connection with its consideration of allowing her to return to work. Even though being forced out on leave had further harmed her emotionally, she knew she needed to work to help support her family.

39.

After some discussion with Ms. Lightfoot, in February 2024 Wellstar offered Ms. Lightfoot the opportunity to choose from three different positions, one as an Employee Health Nurse on the Special Workforce and Tactics (SWAT) Team, and two at facilities other than Cobb (North Fulton and Douglas). This was the first time that positions that did not require working full-time at Cobb had been offered to her since the progressive-hybrid schedule proposed nearly a year earlier (in March 2023), which schedule had been revoked in April 2023.

40.

Wellstar never provided any explanation as to why it could provide reasonable accommodations for her in February 2024 but could not do so in March/April 2023. Nothing about Ms. Lightfoot's condition or limitations had changed, so there is no viable explanation for that change.

41.

Her desire and need to work remaining unchanged, Ms. Lightfoot elected the SWAT Team position, and she finally returned to work on Monday, March 11, 2024. By then she had been on unpaid involuntary leave for over ten months.

42.

In connection with Ms. Lightfoot's return to work in the SWAT Team position, Wellstar was able to accommodate her disability/pregnancy-related limitation by working part-time for four to six weeks as a transition back to working.

43.

During the time that she was on unpaid leave while preferring to work, Ms. Lightfoot began searching for other jobs. Since it appeared to her that Wellstar was not going to allow her to return to work and was going to refuse to accommodate her disability/pregnancy-related limitation, she felt she needed to seek out work elsewhere. She also felt that a different working environment might be better for her mental and physical health, given the distress she had experienced over the year and a half that Wellstar gave her such a difficult time about her condition.

44.

Ms. Lightfoot ended up receiving a job offer for a position with a different health care organization where she would not need accommodations around the same time that she returned to work at Wellstar. Upon accepting that position, she

resigned from her employment with Wellstar on March 15, 2024, just one week after Wellstar finally allowed her to return to work instead of requiring her to be on unpaid leave.

45.

Though Wellstar had finally agreed to provide her requested accommodations just days before the date of her resignation, she had grown weary of the ongoing pushback and lack of cooperation that prevented her from receiving those accommodations. That process and treatment caused Ms. Lightfoot additional emotional distress.

46.

In addition to emotional distress, Wellstar's treatment caused her financial losses, including but not limited to lost back pay and benefits for the ten-month period that she was on unpaid leave.

**COUNT I**
**DISCRIMINATION IN VIOLATION OF THE ADA**

47.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

48.

Between January 2022 and April 2023, Ms. Lightfoot had a disability under the ADA consisting of one or more physical or mental conditions that substantially limited one or more major life activities.

49.

Defendant had knowledge of Ms. Lightfoot's disability.

50.

Throughout her employment with Wellstar, including through the period between her return to work following maternity leave in June 2022 and her resignation in March 2024, Ms. Lightfoot was qualified for her position with Defendant Wellstar and could perform the essential functions of her position with or without reasonable accommodations, including working remotely, in a hybrid capacity, or at any of Wellstar's facilities other than its Cobb hospital.

51.

From June 2022 until December 2022, Ms. Lightfoot was permitted to work remotely as a reasonable accommodation for her disability.

52.

Defendant discriminated against Ms. Lightfoot on the basis of her disability by refusing to properly consider and/or grant reasonable accommodations that would have enabled her to perform the essential functions of her position, such as either

continued remote work, hybrid work, or employment at any one of its facilities other than Defendant's Cobb hospital.

53.

Instead of discussing or providing reasonable accommodations, Defendant gave Ms. Lightfoot a de facto ultimatum, forcing her to choose between returning to in-person work at Defendant's Cobb facility, termination/resignation, or involuntary unpaid leave.

54.

Defendant cannot establish that the accommodations that Ms. Lightfoot requested or which would have enabled her to perform the essential functions of her position were unreasonable where Ms. Lightfoot had already been provided with said accommodations for a period exceeding six months.

55.

Defendant cannot establish that the accommodations that Ms. Lightfoot requested or which would have enabled her to perform the essential functions of her position posed an undue hardship where, just several weeks after forcing Ms. Lightfoot out on leave for the stated reason that a remote position was unavailable, Ms. Lightfoot's department head announced the hire of four new nurse team members, all of whom were hired to work remotely.

56.

Defendant's actions that forced Ms. Lightfoot to choose between resignation/termination or taking unpaid medical leave if she did not return to in-person, full-time work at the Cobb facility constitutes disability discrimination under the ADA.

57.

Defendant's continued refusal to discuss or provide reasonable accommodations that would have enabled Ms. Lightfoot to perform the essential functions of her position throughout the time she remained on leave constitutes disability discrimination under the ADA.

58.

Defendant acted with reckless disregard for Ms. Lightfoot's rights under federal law.

59.

As a direct and proximate result of Defendant's unlawful and discriminatory employment practices, Ms. Lightfoot suffered lost earnings and benefits including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities compensable under the ADA, for which Wellstar is liable.

60.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Lightfoot, authorizing a punitive damages award against Wellstar.

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

61.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

62.

Between June 2022 and her resignation in March 2024, Defendant knew that Ms. Lightfoot had a disability as that term is defined under the ADA.

63.

There were reasonable accommodations available during that time period as referenced above that would have enabled Ms. Lightfoot to perform the essential functions of her position.

64.

Between approximately April 2023 and January 2024, and at other times as well, Wellstar never engaged in the interactive process with Ms. Lightfoot regarding what accommodations might enable her to perform the essential functions of her position.

65.

Defendant's actions in refusing to provide accommodations and its all-or-nothing approach to Ms. Lightfoot's employment at Defendant's Cobb facility after she submitted a reasonable accommodation request constitutes a failure to accommodate in violation of the ADA.

66.

Wellstar specifically informed Ms. Lightfoot that it could not accommodate her when it forced her to take involuntary unpaid leave or resign.

67.

Defendant cannot establish that the accommodations that Ms. Lightfoot requested or which would have enabled her to perform the essential functions of her position posed an undue hardship.

68.

As a direct and proximate result of Defendant's unlawful employment practices, Ms. Lightfoot has suffered lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities compensable under the ADA, for which Defendant is liable.

69.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Lightfoot, authorizing a punitive damages award against Defendant.

## COUNT III
## RETALIATION IN VIOLATION OF THE ADA

### 70.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

### 71.

Ms. Lightfoot's requests for reasonable accommodation, including but not limited to her requests for remote work upon her return from maternity leave in June 2022, her continued requests for remote or hybrid work or work at a facility other than Cobb, and her submission of medical documentation referencing her need for accommodations on multiple occasions, constitute protected activity under the ADA.

### 72.

Ms. Lightfoot suffered adverse employment action when Wellstar refused to accommodate her reasonable requests and forced her to choose between resignation/termination, unpaid leave, or returning to full-time work at its Cobb facility, despite Ms. Lightfoot's ability to perform all the essential functions of her job remotely or at any of Wellstar's several other locations.

### 73.

There is a causal connection between Ms. Lightfoot's protected activity and the adverse employment action she suffered.

74.

Ms. Lightfoot suffered damages as a direct and proximate result of the adverse action taken against her based on her engagement in protected activity, including but not limited to lost wages and benefits and emotional distress.

75.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Lightfoot, authorizing a punitive damages award against Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and requests the following relief:

a) A judgment enjoining Defendant from engaging in unlawful employment practices and awarding Plaintiff back pay as provided by the ADA, 42 U.S.C. § 2000e-5 and other applicable law;

b) A judgment awarding Plaintiff compensatory and punitive damages, in an amount to be determined by the enlightened conscience of the jury;

c) Award Plaintiff her attorney's fees and costs;

d) Award Plaintiff pre-judgment and post-judgment interest; and

e) Award Plaintiff all other and further relief as available under applicable law and as this Court deems just and proper.

Respectfully submitted this 26th day of April, 2024.

**STEMBRIDGE TAYLOR LLC**


*/s/ Lisa D. Taylor*
Lisa Durham Taylor
Georgia Bar No. 235529
lisa@stembridgetaylor.com
3651 Mars Hill Road, Suite 2900B
Watkinsville, Georgia 30677

John T. Stembridge
Georgia Bar No. 678605
john@stembridgetaylor.com
4840 Roswell Road, Suite E300
Atlanta, Georgia 30342
Telephone: (678) 522-0599

Counsel for Plaintiff