# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| AMY LIGHTFOOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:24-cv-01837-JPB-RDC |
| WELLSTAR HEALTH SYSTEM | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND OTHER DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Wellstar Health System, Inc. ("Wellstar"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 8 and 12, hereby files its Answer, Affirmative Defenses, and Other Defenses to Plaintiff's Complaint.

## SPECIFIC RESPONSES TO COMPLAINT

### Nature of Complaint

1.

This action is brought pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), seeking equitable and injunctive relief, back pay, compensatory and punitive damages, attorneys' fees, and costs against Defendant based on Ms. Lightfoot's claims of disability discrimination, failure to accommodate, and retaliation.

**Response:**

Defendant admits Plaintiff asserts claims under the ADA and seeks equitable and injunction relief, back pay, compensatory and punitive damages, attorneys' fees and costs, but denies it violated the ADA and futher denies Plaintiff is entitled to any relief whatsoever. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

## The Parties

2.

Ms. Lightfoot is a citizen of the United States and a resident of the State of Georgia, currently residing in Cobb County. She is a former employee of Defendant Wellstar, where she worked at Defendant's Cobb hospital location. Ms. Lightfoot was, at all times relevant hereto, an employee within the meaning of the ADA. Ms. Lightfoot submits herself to the jurisdiction of this Court.

**Response:**

Upon information and belief, Defendant admits Plaintiff is a citizen of the United States and resides in Cobb County, Georgia. Upon information and belief, Defendant further admits she submits herself to the jurisdiction of this Court. Defendant further admits it previously employed Plaintiff. Defendant further admits that, while it employed Plaintiff, Plaintiff was an "employee" of Defendant as that term is defined by the ADA. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

3.

Defendant Wellstar is a corporation organized under the laws of the State of Georgia with its principal place of business located at 793 Sawyer Road, Cobb County, Marietta, Georgia, 30062. Wellstar is registered to conduct business in the State of Georgia and has employees at multiple locations throughout Georgia who deliver medical and nursing care to the public on its behalf Wellstar may be served through its registered agent for service of process, Leo E. Reichert, at 793 Sawyer Road, Cobb County, Marietta, Georgia, 30062.

**Response:**

Defendant admits it is a Georgia corporation with a principal office address of 793 Sawyer Road, Marietta, Georgia 30062 in Cobb County, Georgia. Defendant further admits it is registered to conduct business in the State of Georgia. Defendant further admits it may be served through its registered agent for service of process, Leo E. Reichert at 793 Sawyer Road, Marietta, Georgia 30062 in Cobb County, Georgia. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

**Jurisdiction and Venue**

4.

Ms. Lightfoot's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 2000e-5(f)(3) and 12101 and other applicable law.

**Response:**

Defendant admits the Court has subject matter jurisdiction over the claims alleged in this lawsuit.

5.

This Court is an appropriate venue for all of Ms. Lightfoot's claims pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) as the judicial district in which the events and omissions, including unlawful employment acts, giving rise to Ms. Lightfoot's claims occurred.

**Response:**

Defendant admits venue is proper.

## Administrative Proceedings

6.

Ms. Lightfoot filed a charge of discrimination with the EEOC on August 16, 2023, setting forth claims of disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. ("ADA"). That Charge was timely filed less than 180 days after the acts of discrimination and retaliation identified in the Charge.

**Response:**

Defendant admits Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 16, 2023 alleging violations of the ADA. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

2

The EEOC issued a Notice of Right to Sue on January 29, 2024, and Plaintiff files this Complaint within 90 days of receipt of that Notice.

**Response:**

Defendant admits the allegations in this paragraph.

## The Facts

### Ms. Lightfoot's Employment History

8.

Ms. Lightfoot began her employment for Wellstar Cobb Hospital on September 14, 2020, where she worked as a Registered Nurse in the Employee Health Department until taking maternity leave in January 2022.

**Response:**

Defendant admits Plaintiff began working for it on September 14, 2020 as a

Registered Nurse in the Employee Health Department. Except as expressly admitted

herein, Defendant denies the allegations in this paragraph.

9.

As a Registered Nurse, her primary duties included, among other things, screening new hire medical information to ensure compliance with health requirements, ordering lab tests, X-rays, and Health Department clearances as needed, reviewing employee health policies with new hires, reviewing annual health questionnaires and TB risk worksheets, gathering and inputting outside immunization records during flu season and for Covid vaccine boosters seasonally, reviewing processes and procedures for bloodborne pathogen exposures, reviewing confidential emails and exemption requests for required vaccines before routing them to the appropriate committees.

**Response:**

Defendant admits the duties identified in this paragraph are some duties of some Registered Nurse positions. Defendant denies the duties identified in this paragraph include all duties of all Registered Nurse positions or apply to all Registered Nurse positions. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

10.

Ms. Lightfoot performed well in this role, received positive performance evaluations, and was well respected by her peers and supervisors alike.

**Response:**

Defendant denies the allegations in this paragraph.

11.

While employed at Wellstar, Ms. Lightfoot reported to Johnny Gaines, Manager of the Employee Health Department. She also reported indirectly to the next level of management, Mr. Dalton Skipper, Director of Employee Health.

**Response:**

Defendant admits that, at times during her employment with Defendant, Plaintiff reported directly to Employee Health Manager of Clinical Operations Johnny Gaines and that Mr. Gaines reported to Director of Employee Health Dalton

Skipper. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

### Ms. Lightfoot's Maternity Leave, Traumatic Birth Experience, and Resulting Pregnancy-Related Limitation/Disabilities

12.

Ms. Lightfoot began a maternity leave in January 2022. At the beginning of her leave, she suffered a traumatic and life-threatening experience while giving birth to her son at the same Wellstar Cobb Hospital where she worked.

**Response:**

Defendant admits Plaintiff began a leave of absence in January 2022 related to the birth of her child. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph and on that basis denies the remaining allegations in this paragraph.

13.

Ms. Lightfoot's mental health suffered greatly as a result of this experience, and she sought psychological and psychiatric treatment in an effort to fully recover from this traumatic event.

**Response:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph and on that basis denies the allegations in this paragraph.

14.

Ms. Lightfoot's diagnoses attributable to the traumatic birth incident include post-traumatic stress disorder, generalized anxiety disorder, and post-partum depression, among others.

**Response:**

Defendant is without knowledge or information sufficient to form a response to the allegations set forth in this paragraph and on that basis denies the allegations in this paragraph.

15.

Ms. Lightfoot's physical and mental conditions stemming from her traumatic childbirth experience substantially limit one or more major life activities, including but not limited to sleeping, thinking, socializing, and relating to others.

**Response:**

Defendant is without knowledge or information sufficient to form a response to the allegations set forth in this paragraph and on that basis denies the allegations in this paragraph.

<u>Ms. Lightfoot's Return to Work and Her Need for Reasonable Accommodations</u>

16.

Ms. Lightfoot was fit to return to work by the time her maternity leave ended in June 2022, but she continued experiencing symptoms of post-traumatic stress disorder and anxiety, including physical manifestations. She found, upon attempting to return to work at the Cobb facility where the incident occurred, that her presence in that building exacerbated her symptoms, including causing a high heart rate and other manifestations of anxiety. Accordingly, her physician determined that it was

medically unsafe, at least temporarily, for her to return to work at Defendant's Cobb hospital location.

**Response:**

Defendant is without knowledge or information sufficient to form a response to the allegations set forth in this paragraph and on that basis denies the allegations in this paragraph.

17.

To accommodate Ms. Lightfoot's limitation (her inability to work onsite at the Cobb hospital where she had a traumatic birth experience) upon her return in June 2022, her manager, Mr. Gaines assigned her duties that could be performed remotely. These duties included monitoring new hires and appointments in ICIMS and coordinating account status with managers, reviewing flu and COVID email inboxes and making updates in Agility and related data storage systems, and corresponding with employees regarding appointment scheduling and follow-ups, among other things. These duties provided Ms. Lightfoot with full-time work.

**Response:**

Defendant denies the allegations in this paragraph.

18.

In September 2022, while Ms. Lightfoot continued to work remotely, Wellstar informed her of flu clinics at its Cobb and Kennestone facilities and offered her the opportunity to drop in and work as long as she could. Ms. Lightfoot attempted to work the flu clinic at Cobb but had an adverse physical and emotional reaction, and when she could not get her heart rate to return to a normal level, she and a Nurse Practitioner working nearby agreed that she should leave.

**Response:**

Defendant is without knowledge or information to form a belief as to Plaintiff's allegation that she "attempt to work the flu clinic at Cobb but had an adverse physical emotional reaction, and when she could not get her heart rate to return to a normal level, she and a Nurse Practitioner working nearby agreed that she should leave" and on that basis denies that allegation. Defendant denies the remaining allegations in this paragraph.

19.

Ms. Lightfoot worked the flu clinics Kennestone during that same time period and was able to work through the end of the clinic schedule without any major adverse reactions. Later, on October 11, she successfully worked an in-person flu clinic at the Windy Hill facility without any health issues.

**Response:**

Defendant is without knowledge or information sufficient to form a response to the allegations set forth in this paragraph and on that basis denies the allegations in this paragraph.

<u>Wellstar's Repeated Demands that Ms. Lightfoot Return to Work at the Cobb Hospital Despite Her Serious Adverse Physical Reaction When in That Building and Her Continued Successful Performance of Remote Duties</u>

20.

During the time period between September and November 2022, and despite clear communication from her health care providers that working in-person at the Cobb hospital would be detrimental to Ms. Lightfoot's health, Wellstar told Ms.

Lightfoot at least twice (once in September and again in November) that she needed to return to work in person at Cobb. Wellstar did not express willingness either time to discuss any other options — it was work at Cobb or apply for leave, and those were the only options given.

**Response:**

Defendant denies the allegations in this paragraph.

21.

After being told she had to return to Cobb in September, Ms. Lightfoot and her supervisor Mr. Gaines worked it out for her to continue working remotely.

**Response:**

Defendant denies the allegations in this paragraph.

22.

In or about November 2022, a Coordinator in Employee Health went out on leave. Despite having informed her that returning to Cobb was the only option for her to keep working, Wellstar asked Ms. Lightfoot to assume some of that Coordinator's duties during her leave, and Ms. Lightfoot readily complied.

**Response:**

Defendant admits that, in November 2022, Plaintiff performed the job duties

of a Coordinator in Employee Health who needed to take a leave of absence. Except

as expressly admitted herein, Defendant denies the allegations in this paragraph.

23.

As of early 2023, Ms. Lightfoot was continuing to perform her full-time remote duties, including those she took on to cover for the Coordinator during her leave. She was also assigned new roles, such as working on the Vaccine Advisory

Committee for Covid exemptions as well as a new role Mr. Gaines had proposed specifically for Ms. Lightfoot on becoming a Blood-Borne Pathogen Exposure Subject-Matter Expert.

**Response:**

Defendant denies the allegations in this paragraph.

<u>The Development of a Plan for Ms. Lightfoot to Reacclimate to In-Person Clinical Work Through a Progressive Hybrid Schedule</u>

24.

In or about February or March 2023, Mr. Gaines and Ms. Lightfoot began discussing a hybrid, progressive schedule for returning to work in person. This included working in-person at the Wellstar Administration building, then adding days there before also adding days in a clinical setting.

**Response:**

Defendant denies the allegations in this paragraph.

25.

By the end of March, Ms. Lightfoot and Mr. Gaines had developed and agreed on a progressive-hybrid plan that would run through July, by which time she would be ready to return to work full-time and in person in a clinical setting.

**Response:**

Defendant affirmatively states that Mr. Gaines sent Plaintiff an email on March 28, 2023 outlining a proposed plan for what Mr. Gaines referred to as a "plan for return to clinic." Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

26.

As part of his communication with Ms. Lightfoot about a newly proposed hybrid schedule, Mr. Gaines specifically noted that the company could look at reassigning her to a different location. Ms. Lightfoot agreed to Mr. Gaines's proposal and began working the progression as suggested, while discussing with her manager the options for clinics that might work well for her given her residence in Smyrna, including Douglas, North Fulton, and Kennestone.

**Response:**

Defendant admits Mr. Gaines discussed with Plaintiff the potential for her to work at a different location. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

<u>Wellstar's Revocation of the Progressive-Hybrid Schedule and Refusal to Provide or Discuss Any Other Reasonable Workplace Accommodations</u>

27.

Despite the fact that Ms. Lightfoot had agreed to and was successfully completing the progression schedule that her supervisor had proposed, and that she had proposed multiple locations where she would gladly accept reassignment for clinical work, Wellstar again changed course.

**Response:**

Defendant denies the allegations in this paragraph.

28.

On or about April 17, 2023, Mr. Gaines informed Ms. Lightfoot that the Director of Employee Health, Dalton Skipper, was requiring her to resume a full-time, on-location schedule five days a week at the Wellstar Cobb facility in just two weeks. This mandate was issued despite the fact that her doctor's orders required that she stay away from that location. Wellstar did not offer her any other options.

**Response:**

Defendant denies the allegations in this paragraph.

29.

Not wishing to give up her job but remaining medically unable to comply with Wellstar's demand that she return to the Cobb facility, Ms. Lightfoot contacted Human Resources to ask what other options may be available and was instructed that she could apply to take involuntary unpaid leave. She requested and was approved for 12 weeks of FMLA leave, from May 5 to July 27, 2023.

**Response:**

Defendant admits Plaintiff was approved for FMLA leave from May 5 to July 27, 2023. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

30.

Ms. Lightfoot did not want to take unpaid leave — she wanted to work — but since Wellstar told her that her only option was to work at the Cobb facility full-time and in-person, she had no choice and was forced out on leave instead.

**Response:**

Defendant denies the allegations in this paragraph.

31.

Wellstar refused to continue to follow the progressive hybrid schedule that it had developed with her in March and refused to provide or even discuss any other accommodations.

**Response:**

Defendant denies the allegations in this paragraph.

32.

Despite representing to Ms. Lightfoot that it could not accommodate her with remote work because it did not have any remote work to be done, shortly after she was forced out on leave, Wellstar brought a team of remote nurses into the same Employee Health Department in which Ms. Lightfoot had worked before her leave began. Those nurses continued working remotely for some time while Ms. Lightfoot remained on involuntary unpaid leave.

**Response:**

Defendant denies the allegations in this paragraph.

<u>Ms. Lightfoot's Involuntary Unpaid Leave and Wellstar's Refusal to Discuss Workplace Accommodations With Her Until Approximately Ten Months Later</u>

33.

Throughout her leave, Ms. Lightfoot wanted to work, but because she had been told her only option to work was full-time, in-person at the Cobb Hospital, she had to remain on unpaid leave instead.

**Response:**

Defendant denies the allegations in this paragraph.

34.

Being forced on leave by her employer — an organization that supposedly strives to help people return to good health — was mentally and emotionally traumatic for Ms. Lightfoot, which exacerbated the very pregnancy-related mental health conditions that caused her to need accommodations to begin with.

**Response:**

Defendant denies the allegations in this paragraph.

35.

Being forced on leave by her employer caused Ms. Lightfoot significant financial losses in the form of lost wages and benefits.

**Response:**

Defendant denies the allegations in this paragraph.

36.

After exhausting twelve weeks of FMLA leave, Ms. Lightfoot found herself in the same difficult position, as Wellstar continued to refuse to accommodate her disability by allowing her to work remotely, work the hybrid progression that it had proposed in March, or place her at another hospital. As such, she requested and was approved for an extended ADA leave, through October 19, 2023, and then again through December 29, 2023.

**Response:**

Defendant admits it agreed to extend Plaintiff's leave of absence through December 29, 2023. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

37.

After repeatedly requesting to return to work throughout her leave in 2023, Wellstar finally expressed willingness to discuss returning her to work and providing her reasonable workplace accommodations in late December 2023.

**Response:**

Defendant denies the allegations in this paragraph.

38.

Ms. Lightfoot eagerly provided all information requested by Wellstar in connection with its consideration of allowing her to return to work. Even though being forced out on leave had further harmed her emotionally, she knew she needed to work to help support her family.

**Response:**

Defendant denies the allegations in this paragraph.

39.

After some discussion with Ms. Lightfoot, in February 2024 Wellstar offered Ms. Lightfoot the opportunity to choose from three different positions, one as an Employee Health Nurse on the Special Workforce and Tactics (SWAT) Team, and two at facilities other than Cobb (North Fulton and Douglas). This was the first time that positions that did not require working full-time at Cobb had been offered to her since the progressive-hybrid schedule proposed nearly a year earlier (in March 2023), which schedule had been revoked in April 2023.

**Response:**

Defendant admits that, in February 2024, it offered her the opportunity to

transfer to three (3) different positions. Except as expressly admitted herein,

Defendant denies the allegations in this paragraph.

40.

Wellstar never provided any explanation as to why it could provide reasonable accommodations for her in February 2024 but could not do so in March/April 2023.

Nothing about Ms. Lightfoot's condition or limitations had changed, so there is no viable explanation for that change.

**Response:**

Defendant denies the allegations in this paragraph.

41.

Her desire and need to work remaining unchanged, Ms. Lightfoot elected the SWAT Team position, and she finally returned to work on Monday, March 11, 2024. By then she had been on unpaid involuntary leave for over ten months.

**Response:**

Defendant denies the allegations in this paragraph.

42.

In connection with Ms. Lightfoot's return to work in the SWAT Team position, Wellstar was able to accommodate her disability/pregnancy-related limitation by working part-time for four to six weeks as a transition back to working.

**Response:**

Defendant denies the allegations in this paragraph.

43.

During the time that she was on unpaid leave while preferring to work, Ms. Lightfoot began searching for other jobs. Since it appeared to her that Wellstar was not going to allow her to return to work and was going to refuse to accommodate her disability/pregnancy-related limitation, she felt she needed to seek out work elsewhere. She also felt that a different working environment might be better for her mental and physical health, given the distress she had experienced over the year and a half that Wellstar gave her such a difficult time about her condition.

**Response:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph and on that basis denies the allegations in this paragraph.

44.

Ms. Lightfoot ended up receiving a job offer for a position with a different health care organization where she would not need accommodations around the same time that she returned to work at Wellstar. Upon accepting that position, she resigned from her employment with Wellstar on March 15, 2024, just one week after Wellstar finally allowed her to return to work instead of requiring her to be on unpaid leave.

**Response:**

Defendant admits Plaintiff resigned her employment with Defendant on or about March 15, 2024. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph and on that basis denies the remaining allegations in this paragraph. Except as expressly admitted herein, Defendant denies the allegations in this paragraph.

45.

Though Wellstar had finally agreed to provide her requested accommodations just days before the date of her resignation, she had grown weary of the ongoing pushback and lack of cooperation that prevented her from receiving those accommodations. That process and treatment caused Ms. Lightfoot additional emotional distress.

**Response:**

Defendant denies the allegations in this paragraph.

46.

In addition to emotional distress, Wellstar's treatment caused her financial losses, including but not limited to lost back pay and benefits for the ten-month period that she was on unpaid leave.

**Response:**

Defendant denies the allegations in this paragraph.

## COUNT 1
## DISCRIMINATION IN VIOLATION OF THE ADA

47.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

**Response:**

Defendant incorporates its answers to Paragraph Nos. 1 to 46.

48.

Between January 2022 and April 2023, Ms. Lightfoot had a disability under the ADA consisting of one or more physical or mental conditions that substantially limited one or more major life activities.

**Response:**

Defendant denies the allegations in this paragraph.

49.

Defendant had knowledge of Ms. Lightfoot's disability.

**Response:**

Defendant denies the allegations in this paragraph.

50.

Throughout her employment with Wellstar, including through the period between her return to work following maternity leave in June 2022 and her resignation in March 2024, Ms. Lightfoot was qualified for her position with Defendant Wellstar and could perform the essential functions of her position with or without reasonable accommodations, including working remotely, in a hybrid capacity, or at any of Wellstar's facilities other than its Cobb hospital.

**Response:**

Defendant denies the allegations in this paragraph.

51.

From June 2022 until December 2022, Ms. Lightfoot was permitted to work remotely as a reasonable accommodation for her disability.

**Response:**

Defendant denies the allegations in this paragraph.

52.

Defendant discriminated against Ms. Lightfoot on the basis of her disability by refusing to properly consider and/or grant reasonable accommodations that would have enabled her to perform the essential functions of her position, such as either continued remote work, hybrid work, or employment at any one of its facilities other than Defendant's Cobb hospital.

**Response:**

    Defendant denies the allegations in this paragraph.

53.

    Instead of discussing or providing reasonable accommodations, Defendant gave Ms. Lightfoot a de facto ultimatum, forcing her to choose between returning to in-person work at Defendant's Cobb facility, termination/resignation, or involuntary unpaid leave.

**Response:**

    Defendant denies the allegations in this paragraph.

54.

    Defendant cannot establish that the accommodations that Ms. Lightfoot requested or which would have enabled her to perform the essential functions of her position were unreasonable where Ms. Lightfoot had already been provided with said accommodations for a period exceeding six months.

**Response:**

    Defendant denies the allegations in this paragraph.

55.

    Defendant cannot establish that the accommodations that Ms. Lightfoot requested or which would have enabled her to perform the essential functions of her position posed an undue hardship where, just several weeks after forcing Ms. Lightfoot out on leave for the stated reason that a remote position was unavailable, Ms. Lightfoot's department head announced the hire of four new nurse team members, all of whom were hired to work remotely.

**Response:**

    Defendant denies the allegations in this paragraph.

56.

Defendant's actions that forced Ms. Lightfoot to choose between resignation/termination or taking unpaid medical leave if she did not return to in-person, full-time work at the Cobb facility constitutes disability discrimination under the ADA.

**<u>Response:</u>**

Defendant denies the allegations in this paragraph.

57.

Defendant's continued refusal to discuss or provide reasonable accommodations that would have enabled Ms. Lightfoot to perform the essential functions of her position throughout the time she remained on leave constitutes disability discrimination under the ADA.

**<u>Response:</u>**

Defendant denies the allegations in this paragraph.

58.

Defendant acted with reckless disregard for Ms. Lightfoot's rights under federal law.

**<u>Response:</u>**

Defendant denies the allegations in this paragraph.

59.

As a direct and proximate result of Defendant's unlawful and discriminatory employment practices, Ms. Lightfoot suffered lost earnings and benefits including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities compensable under the ADA, for which Wellstar is liable.

**Response:**

Defendant denies the allegations in this paragraph.

60.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Lightfoot, authorizing a punitive damages award against Wellstar.

**Response:**

Defendant denies the allegations in this paragraph.

**COUNT II**
**FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**

61.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

**Response:**

Defendant incorporates its answers to Paragraph Nos. 1 to 60.

62.

Between June 2022 and her resignation in March 2024, Defendant knew that Ms. Lightfoot had a disability as that term is defined under the ADA.

**Response:**

Defendant denies the allegations in this paragraph.

63.

There were reasonable accommodations available during that time period as referenced above that would have enabled Ms. Lightfoot to perform the essential functions of her position.

**Response:**

Defendant denies the allegations in this paragraph.

64.

Between approximately April 2023 and January 2024, and at other times as well, Wellstar never engaged in the interactive process with Ms. Lightfoot regarding what accommodations might enable her to perform the essential functions of her position.

**Response:**

Defendant denies the allegations in this paragraph.

65.

Defendant's actions in refusing to provide accommodations and its all-or-nothing approach to Ms. Lightfoot's employment at Defendant's Cobb facility after she submitted a reasonable accommodation request constitutes a failure to accommodate in violation of the ADA.

**Response:**

Defendant denies the allegations in this paragraph.

66.

Wellstar specifically informed Ms. Lightfoot that it could not accommodate her when it forced her to take involuntary unpaid leave or resign.

**Response:**

Defendant denies the allegations in this paragraph.

67.

Defendant cannot establish that the accommodations that Ms. Lightfoot requested or which would have enabled her to perform the essential functions of her position posed an undue hardship.

**Response:**

Defendant denies the allegations in this paragraph.

68.

As a direct and proximate result of Defendant's unlawful employment practices, Ms. Lightfoot has suffered lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities compensable under the ADA, for which Defendant is liable.

**Response:**

Defendant denies the allegations in this paragraph.

69.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Lightfoot, authorizing a punitive damages award against Defendant.

**Response:**

Defendant denies the allegations in this paragraph.

## COUNT III
## RETALIATION IN VIOLATION OF THE ADA

### 70.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

**Response:**

Defendant incorporates its Answers to Paragraph Nos. 1 to 69.

### 71.

Ms. Lightfoot's requests for reasonable accommodation, including but not limited to her requests for emote work upon her return from maternity leave in June 2022, her continued requests for remote or hybrid work or work at a facility other than Cobb, and her submission of medical documentation referencing her need for accommodations on multiple occasions, constitute protected activity under the ADA.

**Response:**

Defendant denies the allegations in this paragraph.

### 72.

Ms. Lightfoot suffered adverse employment action when Wellstar refused to accommodate her reasonable requests and forced her to choose between resignation/termination, unpaid leave, or returning to full-time work at its Cobb facility, despite Ms. Lightfoot's ability to perform all the essential functions of her job remotely or at any of Wellstar's several other locations.

**Response:**

Defendant denies the allegations in this paragraph.

73.

There is a causal connection between Ms. Lightfoot's protected activity and the adverse employment action she suffered.

**Response:**

Defendant denies the allegations in this paragraph.

74.

Ms. Lightfoot suffered damages as a direct and proximate result of the adverse action taken against her based on her engagement in protected activity, including but not limited to lost wages and benefits and emotional distress.

**Response:**

Defendant denies the allegations in this paragraph.

75.

Defendant acted maliciously, willfully, wantonly, oppressively, or recklessly, toward Ms. Lightfoot, authorizing a punitive damages award against Defendant.

**Response:**

Defendant denies the allegations in this paragraph.

## **GENERAL DENIAL**

Except as expressly admitted herein, Defendant denies the allegations in Plaintiff's

Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

## FIRST DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and prerequisites to suit

## THIRD DEFENSE

To the extent Plaintiff's claims are based on or arise out of events alleged to have occurred more than 180 days before she filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), they are barred as untimely.

## FOURTH DEFENSE

To the extent Plaintiff's claims differ from or exceed the scope of the Charge of Discrimination she filed with the EEOC, she fails to state a claim upon which relief can be granted and the claims are barred by Plaintiff's failure to exhaust her administrative remedies.

## FIFTH DEFENSE

To the extent Plaintiff has failed to mitigate her alleged damages, any damages to which she may otherwise be entitled must be reduced accordingly

## SIXTH DEFENSE

Plaintiff's damages, if any, must be reduced by the amount of any benefits she received from collateral sources.

## SEVENTH DEFENSE

To the extent Plaintiff claims punitive damages, her claims cannot succeed because she cannot show Defendant's allegedly unlawful actions were done with malice or reckless indifference to Plaintiff's rights.

## EIGHTH DEFENSE

Defendant asserts the same decision would have been made absent any discrimination and/or based on after acquired evidence.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant exercised reasonable care to prevent and correct promptly any behavior alleged to violate federal law, and because Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by Defendant or to avoid harm otherwise.

WHEREFORE, Defendant asks the Court to:

(l)  Dismiss all of Plaintiff's claims against Defendant with prejudice, and declare that Plaintiff take nothing;

(2)  Enter judgment for Defendant and against Plaintiff on all claims;

(3)  Require that Plaintiff pay all costs; and

(4)  Grant Defendant such further and other relief as the Court deems just and proper.

Respectfully submitted this 28th day of June, 2024.

**GREGORY, DOYLE, CALHOUN & ROGERS, LLC**
*Attorney for Defendant*

/s/ Charles L. Bachman, Jr.
Charles L. Bachman, Jr.
Georgia Bar No. 030545

49 Atlanta Street
Marietta, GA 30060
Phone: 770-422-1776
cbachman@gdcrlaw.com

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1B

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1B and uses 14 point Times New Roman Font.

/s/ Charles L. Bachman, Jr.
Charles L. Bachman, Jr.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| AMY LIGHTFOOT, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:24-cv-01837-JPB-RDC |
| WELLSTAR HEALTH SYSTEM | ) | |
| INC., | ) | |
| | ) | |
|     Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2024, I served the foregoing DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND OTHER DEFENSES TO PLAINTIFF'S COMPLAINT with the Clerk of Court by using the CM/ECF electronic filing system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Lisa D. Taylor
lisa@stembridgetaylor.com

John T. Stembridge
john@stembridgetaylor.com

/s/ Charles L. Bachman, Jr.
Charles L. Bachman, Jr.